IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FSD PHARMA, INC.,** *Petitioner*, v. **RAZA BOKHARI,** *Respondent.* | Case No. 2:23-mc-0150-JDW |

## MEMORANDUM

Raza Bokhari may be thinking, "It seems that everything's gone wrong since Canada came along!"[1] In 2019, he took a job as the CEO of FSD Pharma, Inc. In 2021, he lost a proxy fight with the company's founder and then lost his job. He filed an arbitration, and he lost that too; his adversary, FSD, defeated Dr. Bokhari's claims and succeeded on several counterclaims. Dr. Bokhari was once satisfied with the composition of the arbitration, its scope, and the allocation of costs and fees but changed his mind when he saw the result. While it's easy for him to claim unfairness considering the bind he's created, Dr. Bokhari has himself to blame for this predicament—not FSD, not the arbitrator, and certainly not Canada. He has not offered reasonable grounds for why I should refuse to enforce the award against him.

---

[1] *Blame Canada, on* South Park: Bigger, Longer, and Uncut (Atlantic Records 1999).

I.   **BACKGROUND**

Dr. Bokhari was the CEO of FSD Pharma from February 2019 until July 2021. During that time, Dr. Bokhari entered into an Employment Agreement with FSD that provided for the terms of his position, including severance calculation and the Parties' duty to arbitrate any disputes. In 2021, he lost a proxy fight with FSD's founder, who took control of the Board. The newly elected Board terminated him. He and the company disputed whether the company had dismissed him improperly or terminated him for cause. Pursuant to the Employment Agreement, Dr. Bokhari initiated a Dispute Resolution Procedure. Attempts to resolve the dispute amicably failed, and Dr. Bokhari subsequently submitted the matter to arbitration.

In his Notice Of Arbitration, Dr. Bokhari sought declaratory relief and monetary compensation. He also requested an award of costs, including his legal fees and the arbitrator's fees. FSD asserted counterclaims against Dr. Bokhari. The Parties jointly selected the Honorable Justice Douglas Cunningham, K.C., a retired Justice of the Ontario Superior Court, to arbitrate the dispute. Prior to his appointment and with ample opportunity to inquire as to any conflicts of interest, both Parties agreed that Justice Cunningham was "eminently qualified" to preside. (ECF No. 1-2, Ex. 2 at 5, ¶ (k).)

Following an eight-day evidentiary hearing, briefing, and more than two days of oral argument, Justice Cunningham issued a reasoned Merits Award, a Final Award assigning damages, and a Final Costs Award. In December 2022, Dr. Bokhari commenced an action in the Ontario Superior Court of Justice to set aside the Merits Award, and FSD commenced its

own action to enforce the Awards. While those cases were ongoing, Dr. Bokhari raised a concern regarding possible partiality of Justice Cunningham. On October 3, 2023, the Ontario Superior Court of Justice denied Dr. Bokhari's motion to set aside the award and granted FSD's enforcement action. Dr. Bokhari moved for leave to appeal the Superior Court's decision. The Court of Appeal for Ontario, whose appellate review is discretionary, denied his motion.

On December 1, 2023, FSD filed a petition in this Court seeking confirmation of the Canadian arbitral award. Dr. Bokhari answered the Petition and moved to refuse enforcement.[2] The Petition and Motion are now ripe.

## II.     LEGAL STANDARD

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ("New York Convention"), as incorporated into the Federal Arbitration Act ("FAA"), governs federal enforcement of an arbitral award granted by a forum in or applying the law of a non-U.S. party to the treaty (such as Canada). *See* 9 U.S.C. § 207. Pursuant to the FAA, a judge must confirm a foreign arbitration award "unless

---

[2] Dr. Bokhari's opposition to FSD's petition to enforce the Canadian arbitration award is styled as a "Cross Motion To Set Aside Arbitration Award." (ECF No. 9-1 at 1.)  Throughout his brief, he asks that the award be "set aside" for various reasons he believes are within the purchase of Article V. And he suggests that "set aside" is synonymous with "refuse to enforce" in the context of arbitration award confirmation. I disagree. The text of the New York Convention itself makes the distinction. *Compare* N.Y. Convention art. 1 *with id.* at art. 1(e). Still, Dr. Bokhari disclaims any argument that he is seeking to alter the Canadian arbitration award. To the extent Dr. Bokhari's Motion sought set aside of the award, I deny him that relief for lack of subject matter jurisdiction.

[he] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.*

Confirming such an award is a two-step process. *First*, a judge must determine whether enforcement is appropriate by independently identifying that an agreement to arbitrate existed, and the party seeking enforcement must present the judge with an authentic copy of the arbitration award. *See Jiangsu Beier Decoration Materials Co., Ltd. v. Angle World LLC*, 52 F.4th 554, 559 (3d Cir. 2022). *Second*, upon request of the respondent to a petition for enforcement, a judge may refuse to enforce the award for any of the reasons listed in Article V of the New York Convention. *Id.* at 561. The five bases listed in Article V are the exclusive grounds for refusing enforcement. *See Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742 (5th Cir. 2008). Courts construe those grounds narrowly with the presumption of enforceability. *See China Minmetals Imp. and Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 283 (3d Cir. 2003).

While the New York Convention provides limited circumstances under which a district court judge may refuse to enforce a foreign arbitration award, it also prohibits modification of the award except by "the court in the country in which, or under the law of which, the award was made." *Gulf Petro*, 512 F.3d at 747 (citation omitted). Therefore, a United States court considering a foreign arbitration award lacks subject matter jurisdiction to vacate, set aside, or modify such an award. *Id.* (citing *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 848–49 (6th Cir. 1996); *Tatneft v. Ukraine*, 21 F.4th 829, 836 (D.C. Cir. 2021).

4

**III.     ANALYSIS**

**A.     Existence Of An Arbitration Agreement And An Authentic Award**

A party seeking to enforce a foreign arbitral award must supply the court from which it seeks enforcement "(a) The duly authenticated original award or a duly certified copy thereof [and] (b) The original agreement referred to in article II or a duly certified copy thereof." N.Y. Convention., art. IV. Article II provides that the courts of a contracting state "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or why may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration" and that "[t]he term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams. *Id.* at art. II, §§ 1 and 2.

Along with its Petition, FSD filed the documents required for enforcement pursuant to 9 U.S.C. § 13, including the agreement to arbitrate and the arbitration award. (ECF No. 1-2.) Both Parties signed the document containing this arbitration agreement, so it is within the embrace of Article II's requirements for a valid agreement.

**B.     No Grounds For Refusal**

Article V of the New York Convention offers five exclusive grounds on which a court may refuse to enforce a foreign arbitral award, three of which Dr. Bokhari invokes in his motion: partiality of the arbitrator; a lack of notice about the scope of the arbitration because

the arbitrator decided facts outside the pleadings; and the arbitrator decided issue beyond the scope what the parties submitted because he assigned costs and fees. *See id.* at § V(1). None of these warrants declining to enforce the arbitration award.

### 1. Partiality

An arbitrator's partiality is not one of the bases for refusing confirmation enumerated in the New York Convention. *See id.* at art. V. On its face, that should be the end of the issue because the five grounds listed in the New York Convention are exclusive. But Dr. Bokhari tries to shoehorn his claims about Justice Cunningham's partiality into the rubric of the arbitration being contrary to the parties' arbitration agreement. To get there, Dr. Bokhari makes the following argument: (a) the arbitration agreement provides that proceedings would occur pursuant to the Ontario Arbitration Act; (b) the Ontario Arbitration Act provides that an arbitrator "shall be independent of the parties and shall act impartially;"[3] (c) some Ontario courts have looked to the International Bar Association Guidelines On Conflicts In International Arbitration as persuasive authority on disclosure obligations to avoid the appearance of bias; and (d) Justice Cunningham did not disclose engagements that could create the appearance of bias. If that chain of logic seems tortured, it is, and it doesn't create a basis for me to refuse to enforce the Awards.

*First*, the IBA Guidelines are not part of the law that governed the parties' arbitration agreement. Ontario courts might treat them as highly persuasive, but there's a difference

---

[3] Ontario Arbitration Act, 191 S.O. 1991, c.17, § 11(a).

between persuasive and governing authority. Dr. Bokhari has not shown that the IBA Guidelines controlled. It's worth noting that the Ontario Superior Court of Justice didn't think the IBA Guidelines were binding when it rejected Dr. Bokhari's attempt to avoid the arbitration award in Canada. And that Court would know better than me whether the Guidelines are binding or persuasive authority. Even if there were a question about the binding effect of the IBA Guidelines—and there's none in my mind—I'd have to resolve it against Dr. Bokhari because I construe the exceptions narrowly and in favor of confirmation.

*Second*, Dr. Bokhari has waived any argument he had that Justice Cunningham violated the IBA Guidelines or that such a violation tainted the proceedings. Dr. Bokhari knew about the IBA Guidelines when he agreed to arbitrate his dispute and when he agreed to Justice Cunningham's appointment. If Dr. Bokhari needed disclosures to avoid potential bias, he should have asked for those disclosures at the outset. But he didn't. By all accounts, Dr. Bokhari was pleased with Justice Cunningham's appointment and only became concerned with the possibility of bias after the unfavorable award against him.

## 2. Due process/scope of case

A court may refuse enforcement of an award if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." N.Y. Convention., art. (V)(1)(b). This defense "basically corresponds to the due process defense that a party was not given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'"

*Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129 (7th Cir. 1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Under the American interpretation of the New York Convention, standards of due process in the enforcing court's state control. *See Anhui Provincial Imp. and Exp. Corp. v. Hart Enter. Int'l, Inc.*, Civ. Action No. 96-128, 1996 WL 229872, at *3 (S.D.N.Y. May 7, 1996) (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974)).

Dr. Bokhari does not dispute that he had notice of the arbitration proceeding in Ontario, nor could he. He also acknowledges, as he must, that he received the pleadings in that case, heard FSD's arguments, and participated in the proceedings. Despite getting all that process, he challenges the validity of the proceeding, but none of his complaints rises to the level of a due process violation.

Dr. Bokhari claims that he did not have notice because Justice Cunningham reached facts that FSD did not put in its pleadings. But that happens all the time, particularly under a notice pleading standard. Dr. Bokhari has not demonstrated that the arbitration proceeding required a higher pleading standard. Nor has he demonstrated that Justice Cunningham reached some issue that wasn't argued in the hearing or otherwise found facts from beyond the evidentiary record. Dr. Bokhari therefore hasn't carried his burden of demonstrating an absence of due process.

Dr. Bokhari also falls back again on Justice Cunningham's alleged partiality as a basis to claim that he didn't know the scope of the proceedings. The argument makes no sense.

The question is whether Dr. Bokhari knew about the proceedings, which he did, and knew the arguments being made in those proceedings, which he did. In any event, even if I were to credit the argument as something more than non-sensical, I would reject it because, as I've already concluded, Justice Cunningham did not violate the Ontario Arbitration Act.

### 3. Scope of the agreement

A judge may refuse to enforce an award upon a showing that "the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration[.]" N.Y. Convention, art. V(1)(c). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworks v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Therefore, if the Parties did not agree in the controlling arbitration agreement to submit a matter to arbitration, I may choose not to enforce the resulting award.

Dr. Bokhari has not shown that any aspect of the arbitration award exceeded the bounds of the arbitration agreement. *First*, he renews his claim that the award decided issues that FSD did not plead. But Article V(1)(c) is concerned with whether an issue was arbitrable based on the agreement, not whether a party had adequate notice. *Second*, he argues that the arbitrator lacked jurisdiction to award costs and attorneys' fees. But the employment agreement between the Parties—the agreement that Dr. Bokhari invoked in his claim against FSD—states that "[t]he Arbitrator shall be responsible for awarding costs

(including legal fees) to a party, based upon the respective responsibility of the parties for the Dispute[,] . . . [and] the party against whom an award is rendered shall bear all fees and disbursements of the Arbitrator." (ECF No. 1-2, Ex. 3 § 7.5(a)-(b).) It is also unclear when Dr. Bokhari changed his position regarding arbitrability of costs and fees, as he both sought and accepted them earlier in the course of the arbitration against FSD. (ECF Nos. 1-2, Ex. 1 § 1(d); 13, Ex. 1 at ¶ 13.) This is not a close call; the Parties agreed that the arbitrator would decide the fees and costs.

## IV.    CONCLUSION

Dr. Bokhari might be upset that what started as a complaint against his former company ended as a seven-figure judgment against him. I don't blame him. But him being upset does not give me leave to interfere with a foreign tribunal's adjudication on the merits or denying FSD's right to enforcement in this district. I will therefore grant FSD's Petition and deny Dr. Bokhari's Motion. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

May 29, 2024